UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LUIS MONELL

        Plaintiff,

      v.                       **REPORT AND RECOMMENDATION**
                                 **8:08-CV-0821 (NAM)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

      Plaintiff Luis Monell brings this action pursuant to the Social Security Act ("the

Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security  ("Commissioner"), denying his application for

Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of

the Administrative Law Judge ("ALJ") denying his application for benefits was not

supported by substantial evidence and was contrary to the applicable legal standards.

The Commissioner argues that the decision was supported by substantial evidence and

made in accordance with the correct legal standards.

## II.    Background

      On November 30, 2004, Plaintiff, then 38 years old, filed an application for SSI

claiming disability since November 1, 2004, because of a back problem, liver disease,

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to
Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.

and an adjustment disorder (R. at 33, 69-71, 77).[3] His application was denied initially on June 7, 2005 (R. at 30-33). Plaintiff filed a timely request for a hearing on June 23, 2005 (R. at 34).

On July 19, 2007, Plaintiff and his attorney appeared before the ALJ via videoconference (R. at 300-318).The ALJ considered the case *de novo* and, on July 25, 2007, issued a decision finding Plaintiff was not disabled (R. at 11-23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on June 3, 2008 (R. at 3-6). On July 29, 2008, Plaintiff filed this action disputing his disability determination.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

### III.    Discussion

#### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the

---

[3] Citations to the underlying administrative record are designated as "R."

[4] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

---

[5] This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Based on the entire record, the Court recommends remand because the ALJ erred in failing to assess Plaintiff's mental impairment when formulating the RFC.

### B.  Analysis

#### 1.        The Commissioner's Decision

The ALJ concluded that Plaintiff was not disabled within the meaning of the Act (R. at 23). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2004 (R. at 16). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and hepatitis C (R. at 16). However, the ALJ found that Plaintiff's adjustment disorder and addiction in remission were not severe impairments (R. at 17-19). At step three, the ALJ concluded that Plaintiff's impairments did not meet a Listing, either individually or in combination (R. at 19). At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work (R. at 19). Specifically, the ALJ found Plaintiff had the RFC to "sit for six hours in an eight-hour workday and stand or walk for two hours in an eight-hour workday. . . [and] lift ten pounds frequently." (R. at 19). The ALJ further found that Plaintiff could only occasionally kneel, climb, bend, and squat (R. at 22). In reaching this RFC, the ALJ considered Plaintiff's subjective complaints and found them "not entirely credible" (R. at 21). Based upon this RFC, the ALJ found that Plaintiff could not perform his past relevant work as a welder or print shop assistant (R. at 22). Finally, considering Plaintiff was a younger individual, with a high school education and the ability to communicate in English, the ALJ used Medical-

Vocational Guideline Rule 201.28[6] to find Plaintiff not disabled (R. at 23).

### 2. Plaintiff's Claims

Plaintiff argues that (a) the ALJ erred in failing to find Plaintiff's adjustment disorder severe at step two; (b) the RFC determination is not supported by substantial evidence; and (c) that because the ALJ failed to properly consider Plaintiff's non-exertional impairments in determining his RFC, he improperly relied upon Medical-Vocational rules at step five. Plaintiff's Brief, pp. 11-15.

### a. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff's Adjustment Disorder was not a Severe Impairment

Plaintiff argues that the ALJ's conclusion that Plaintiff's mental impairment was not severe was "unsupported in the record." Plaintiff's Brief, p. 11. Defendant argues that the ALJ's determination was supported by the evidence of record. Defendant's Brief, pp. 5-7.

After carefully reviewing the record, the Court concludes that the ALJ applied the proper legal standard at step two and his conclusion that Plaintiff's mental impairment was not severe was supported by substantial evidence.

At step two when evaluating Plaintiff's mental impairment, the ALJ thoroughly discussed the three medical opinions relevant to Plaintiff's mental functioning (R. at 17-19). The ALJ assigned "little" or "some" weight to each of the three opinions, explaining the weight he gave to each opinion by referencing various factors listed in the

---

[6] Medical-Vocational Guideline Rule 201.28 requires a finding of not disabled when a claimant is a younger individual (18 to 44  years old), is a high school graduate or more, and has skilled or semi-skilled past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.28.

regulations[7] (R. at 18-19); <u>see</u> 20 C.F.R. § 416.927(d)(2) (listing factors used to weigh medical opinions such as whether the opinion is supported, whether and how frequently the source examined the claimant, and the source's knowledge of the impairment). Furthermore, in assessing Plaintiff's mental impairment, the ALJ also applied the "special technique," as required by the regulations. <u>See</u> 20 C.F.R. § 416.920a; <u>Kohler v. Astrue</u>, 546 F.3d 260, 265-66 (2d Cir. 2008) (<u>citing</u> 20 C.F.R. § 404.1520a). The special technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 416.920a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[8] § 416.920a(c)(3). If the ALJ "rates the degree of limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) [are] not severe." § 416.920a(d)(1).

In this case, the ALJ found that Plaintiff had "mild restriction in his activities of daily living," "mild difficulties in maintaining social functioning," "mild difficulties in maintaining concentration, persistence or pace," and no episodes of decompensation (R. at 17-18). Therefore, the ALJ concluded that Plaintiff's adjustment disorder was not severe (R. at 18). The Court finds that substantial evidence in the record supports the ALJ's conclusions in each of the four areas.

---

[7] The Court notes that Plaintiff has raised no objections to the ALJ's treatment of the medical opinions. Therefore the Court will not address this issue further.

[8] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." <u>Kohler</u>, 546 F.3d at 266 n.5 (<u>quoting</u> United States Social Security Administration, Disability Evaluation Under Social Security § 12.00 (June 2006)).

With respect to Plaintiff's activities of daily living, Plaintiff reported that although he receives some assistance from a friend, he has "no problem" caring for his personal needs, he cooks once or twice a week, goes shopping for food or clothes, handles his money and bills, reads and watches television everyday, and occasionally drives (R. at 110-13). Plaintiff also told Dr. Annette Payne, consultative psychologist, that although he is "constantly nervous and anxious" and has anxiety attacks, he was capable of self-care, walks his dog, and is able to do some laundry, cooking, cleaning, and shopping (R. at 160-63).[9] Plaintiff told Dr. Amelita Balagtas, orthopedic consultative examiner, that he was capable of self-care, grooming and dressing, and could do some driving (R. at 139). Although Dr. Rita S. Petro, the reviewing psychologist, opined that Plaintiff had moderate limitations in activities of daily living, the ALJ only gave her opinion little weight because Dr. Petro did not personally examine Plaintiff and the degree of limitation was not supported by Plaintiff's statements or Dr. Payne's report (R. at 19, 183). While the record indicates that Plaintiff has some limitations in his activities of daily living, substantial evidence supports the ALJ's conclusion that such limitations are no more than mild.

With respect to social functioning, Plaintiff reported that a friend regularly helped him around the house and with his children, that his children occasionally lived with him, and that about twice a week he talked to friends on the phone or visited with them (R. at 110-14). Plaintiff reported to Dr. Payne that he had good relationships with his mother and four children and had a couple of friends who were very supportive (R. at 162-63). Plaintiff further reported that he had no problems getting along with others and had

---

[9] Plaintiff told Dr. Payne he stopped driving because of his anxiety, but other evidence of record indicates that Plaintiff merely limited his driving (R. at 112, 139, 162).

never lost a job due to interpersonal problems (R. at 115-16). Although the record indicates that Plaintiff suffered from anxiety attacks, substantial evidence does not indicate that his anxiety created more than a mild limitation in Plaintiff's social functioning.

With respect to Plaintiff's concentration, persistence or pace, Plaintiff reported that he had no trouble paying attention, no trouble remembering things, and only struggled to finish what he started because of fatigue or pain (R. at 115-16). Dr. William Browne, Plaintiff's treating physician and general practitioner, opined that Plaintiff was moderately limited in his ability to maintain attention and concentration, but the ALJ granted Dr. Browne's opinion on this point "little weight" because the doctor "provided no objective evidence" to support the opinion (R. at 19, 280). Dr. Petro, the reviewing psychologist, opined that Plaintiff was only mildly limited in concentration, persistence and pace (R. at 183). And, Dr. Payne observed that Plaintiff's attention and concentration were "mildly impaired," but also opined that Plaintiff would have moderate difficulty maintaining attention and concentration, maintaining a regular schedule, and making decisions (R. at 162-63). Given the conflict amongst the medical opinions on this issue, the ALJ appropriately evaluated the evidence and "[chose] between properly submitted medical opinions." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). The Court concludes that substantial evidence of record supports the ALJ finding that Plaintiff's had mild limitations in maintaining concentration, persistence, or pace.

Finally, the record contains no evidence that Plaintiff ever suffered from an episode of decompensation. Therefore, the Court concludes that the ALJ's finding in each of the functional areas was supported by substantial evidence and his overall

9

determination that Plaintiff's adjustment disorder was not severe was also supported by substantial evidence.

### b. The ALJ Erred in Failing to Assess Plaintiff's Mental Abilities in Determining his RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination. Plaintiff's Brief, pp. 12-14. Defendant argues that the ALJ's RFC determination was supported by substantial evidence. Defendant's Brief, pp. 8-11.

The Court concludes that the ALJ's RFC determination was not in accordance with the legal standard and not supported by substantial evidence because the ALJ made no findings regarding Plaintiff's mental abilities. 20 C.F.R. § 416.945(a)(4) (requiring and ALJ to "consider [the claimant's] ability to meet the physical, mental, sensory, and other requirements of work" when assessing a claimant's RFC); 20 C.F.R. § 416.945(c) (describing the assessment of "mental abilities" which may reduce a claimant's ability to work, "such as limitations in understanding, remembering or carrying out instructions"). The ALJ concluded that Plaintiff had the RFC to sit for six hours, stand or walk for two hours, occasionally kneel, squat, climb and bend, and frequently lift ten pounds (R. at 19). In reaching this RFC determination, the ALJ only specified Plaintiff's physical abilities. See 20 C.F.R. § 416.945(b) (describing the physical demands of work as abilities "such as sitting, standing, walking, lifting, carrying, pushing, pulling, and other physical functions"). However, the regulations clearly state that when determining an RFC the ALJ must also consider a claimant's mental abilities, even those that were not severe at step two. 20 C.F.R. §§ 416.945(a)(4), (b); 20 C.F.R. § 416.945(a)(2) (requiring the ALJ to consider all a claimant's impairments, including

those "that are not 'severe'"). The ALJ's failure to determine Plaintiff's mental abilities in formulating the RFC is legal error. 20 C.F.R. § 416.945(a)(4).

The ALJ not only failed to specify Plaintiff's mental abilities in the RFC, but he also failed to even consider the evidence relating to Plaintiff's mental impairments while formulating the RFC (R. at 21-22). This is confirmed by the ALJ's exclusive focus on evidence of Plaintiff's physical abilities. In formulating the RFC, the ALJ carefully explained the medical opinions upon which he relied and the weight he gave them (R. at 21-22). The ALJ gave "significant weight" to the opinions of Dr. Browne, but only with respect to "the claimant's ability to sit, stand, walk, lift, push, pull, bend and climb" (R. at 21). The ALJ gave "some weight" to the opinions of Dr. Balagtas, whose orthopedic examination assessed only Plaintiff's bending, lifting, sitting, standing, and walking (R. at 22, 139-41). Finally, the ALJ gave "some weight" to the opinions of reviewing medical consultant, Dr. Bodnar, whose opinion was limited to Plaintiff's abilities to stand, walk, sit, carry, bend, stoop, and handle heights and heavy machinery (R. at 22, 165).

The Court notes that the ALJ was not limited by a lack of evidence pertaining to Plaintiff's mental impairment. See Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.) (stating that where this is no allegation of a limitation and no information in the record of a limitation, the ALJ must consider the claimant to have no limitation in that area) (hereinafter SSR 96-8p).To the contrary, the record contained opinions from Drs. Browne, Payne, and Petro regarding Plaintiff's mental abilities and the ALJ gave "some" or "little" weight to each opinion at step two (R. at 18-19). In omitting Plaintiff's mental abilities from consideration in the RFC, the ALJ effectively rejected the opinions of Drs. Browne, Payne, and Petro (R. at 18-19, 21-22). Notably, at step two the ALJ found

11

Plaintiff had mild limitations in three areas of mental functioning, (R. at 17); see supra Part III.B.a (upholding the ALJ's findings at step two). Thus, at step two the ALJ indicated that Plaintiff had at least some mental limitations, but at step four the ALJ failed to consider the relevant evidence or reach findings on Plaintiff's mental abilities. In light of the evidence of record indicating that Plaintiff had at least mild limitations in his mental abilities, the Court further concludes that substantial evidence does not support the ALJ's RFC determination. See Pease v. Astrue, 2008 WL 4371779, at * 21 (N.D.N.Y. Sept. 17, 2008) ("An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.") (citing Martone v. Apfel, 70 F.Supp.2d 145, 150 (2d Cir. 1999)).

Although the ALJ was not required to find that Plaintiff had mental limitations, or adopt the medical opinions of Drs. Browne, Payne, and Petro regarding Plaintiff's mental limitations, he was required to explain his RFC determination. Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.) (requiring the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.") (hereinafter SSR 96-8p);  Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007) (requiring the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence") (quoting SSR 96-8p, 1996 WL 374184). After carefully reviewing the record, the Court concludes that in determining Plaintiff's RFC the ALJ failed to specify what Plaintiff's mental abilities or limitations were, consider the

12

evidence of mental impairment, or explain his conclusions. On remand, the ALJ must consider Plaintiff's mental abilities in formulating his RFC.

### c.  The ALJ's Remaining Analysis is Necessarily Flawed

Because the Court has concluded that the ALJ erred in assessing Plaintiff's mental impairment in determining Plaintiff's RFC, the ALJ's remaining analysis is necessarily flawed.

### IV.    Conclusion

After carefully examining the administrative record, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. The Court concludes that when formulating the RFC the ALJ failed to consider evidence of Plaintiff's mental impairment, failed to specify his findings pertaining to Plaintiff's mental abilities, and failed to explain his reasoning. Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: November 16, 2009

Syracuse, New York

13

**Orders**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

Victor E. Bianchini
United States Magistrate Judge


DATED: November 16, 2009

Syracuse, New York